**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERTO MATA (#R-41813), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 12-cv-01376 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CHRISTINE BRANNON, Warden, | ) | |
| Hill Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Roberto Mata, a prisoner at Hill Correctional Center proceeding *pro se*,

initiated this petition for a writ of habeas corpus under 28 U.S.C. § 2254 in 2012, challenging his

state court convictions for murder and aggravated battery. The case was subsequently stayed

while Mata exhausted the state court remedies for one of his claims. Following the conclusion of

state court proceedings for that claim and briefing by the parties, Mata's petition is now ripe for

ruling. For the reasons below, the Court denies Mata's amended § 2254 petition and declines to

issue a certificate of appealability.

## I.     BACKGROUND

### A.     Facts[1]

In 2005, Mata was convicted of the first-degree murders of Adrian Padilla and Sander

Mosqueada, and the aggravated battery with a firearm of Edwin Delgado. (Dkt. No. 20-2 at 1)

---

[1] This Court looks to the state appellate court decisions in Mata's direct appeal and two state post-
conviction proceedings for the background facts. *See People v. Mata*, No. 1-05-0527 (Ill. App. Ct. 2007)
(Dkt. No. 20-2 at 1); *People v. Mata*, 1-09-0657, 2011 WL 9684766 (Ill. App. Ct. 1st Dist. June 17,
2011); *People v. Mata*, 2016 IL App (1st) 122408-U; *see also Hartsfield v. Dorethy*, 949 F.3d 307, 309
n.1 (7th Cir. 2020) ("We take the facts from the Illinois Appellate Court's opinions because they are
presumptively correct on habeas review.") (citing 28 U.S.C. § 2254(e)(1)). The state appellate court

(*People v. Mata*, No. 1-05-0527 (Ill. App. Ct. 2007)). At trial, Mata did not contest that he shot Padilla, Mosqueada, and Delgado. Instead, he argued that his actions were justified to protect his friend, Reynaldo Mares, who was being beaten. (Dkt. No. 20-2 at 1–2.) Mata also argued, in the alternative, that if his belief in the need to use deadly force was unreasonable, he was guilty of only second-degree murder.[2] (*Id.*)

Delgado, the State's only eyewitness, testified at trial as follows. He claimed that during the early morning hours on March 16, 2002, he, his friend Padilla, and another man (William Rivera) were in Padilla's car drinking beer on the 2000 block of 18th Place on Chicago's southside. (Dkt. No. 20-2 at 2.) The area was in the territory of the Satan Disciples, a street gang to which Padilla and Delgado belonged. (*Id.*) Rivera left the car to go to a party, and Delgado and Padilla left to go home. (*Id.*)

As Delgado and Padilla were walking, Delgado saw two women, followed by two men (Mata and Mares) enter 18th Place from a gangway. (*Id.* at 3.) Mares was wearing a Houston Astros baseball cap with a cracked five-point star. (*Id.*) While the cracked five-point star was a symbol of the Folks Nation, a gang to which the Satan Disciples belonged, an Astros cap was not. (*Id.*) The Astros cap, according to Mares' statement to officers later, was a symbol of the Latin Kings, a rival gang of the Satan Disciples. (*Id.* at 8.)

Delgado testified that Padilla asked Mata and Mares who they were, to which Mares responded "fuck off" and then ran toward Delgado, striking him in the chest. (*Id.* at 3.) Delgado

---

opinion on direct appeal discusses the facts more thoroughly than the other decisions, so this Court draws the background facts mainly from that decision.

[2] Under Illinois law, a defendant may be found guilty of second-degree murder when first-degree murder has been proved beyond a reasonable doubt, and the defendant then proves by a preponderance of the evidence that he was acting under sudden passion from serious provocation or he unreasonably believed that circumstances existed justifying the killing. *See* 720 ILCS 5/9-2(a)(1)-(2).

was able to pin Mares to the ground. Mares called for help to Mata, who was about eight feet away. (*Id.*) Mata drew a gun and pointed it at Delgado. (*Id.*) Delgado testified that, when he saw the gun, he let go of Mares and began backing away. (*Id.*) Delgado attempted to run away but, before he could do so, he was shot in the buttocks. (*Id.*) He testified that he heard six shots fired at that time, and he saw that Padilla had also been shot. (*Id.*) Still attempting to flee, Delgado and Padilla began running down the middle of the street. While doing so, Delgado fell. (*Id.* at 3–4.) He then saw Mata walk around a parked car and begin firing at another man who Delgado could not see, but who he later learned was Mosqueada. (*Id.* at 4.) According to Delgado, he and Padilla then began running, and Mata shot at both of them. (*Id.*) The shots missed Delgado but hit Padilla, who "fell like a brick." (*Id.*)

Two days after the incident and a day after his arrest, Mata gave a videotaped statement, which the State played at trial. (*Id.* at 5–6.) In the statement, Mata explained that he and his girlfriend, Esmerelda Herrera, went to a housewarming party on March 15, 2018. (*Id.* at 6.) He met several friends there, including Mares, Chad Cruz, and Karina Pinedo. (*Id.*) Mata was carrying a loaded semi-automatic gun at the time. (*Id.*) Two Hispanic men, who nobody knew, arrived at the party, smoked marijuana, and then left. (*Id.*) Soon after, Mata, Herrera, Mares, Pinedo, and Cruz left the party. (*Id.*)

According to Mata's statement, he and Herrera were walking in front of the others when he heard Mares call out. (*Id.*) Mata looked behind him and saw the two men from the party holding Mares by his arms while two other Hispanic men surrounded him. (*Id.*) Mata took out his gun and fired one shot in the direction of the four men, who then backed away from Mares. (*Id.*) Mata said in his statement that, as he was going toward Mares to help him up, he saw one of the men reach toward his pocket. (*Id.*) Believing the man was reaching for a weapon, Mata fired

five more shots in the direction of the men. (*Id.*) Mata stated that he never actually saw a weapon and none was found on the victims. (*Id.*)

Mata also testified at trial. There, he testified, contrary to his videotaped statement, that Mares was being beaten and kicked by the men. (*Id.* at 7.) He further testified that he fired one shot in the air to stop the men, who backed away but did not leave. (*Id.*) Similar to his videotaped statement, Mata claimed that as he went to assist Mares off the ground, he saw one of the men reach toward his waist, at which time Mata fired his gun several more times. (*Id.*) Mata and Mares then ran to Herrera's car parked nearby. (*Id.*) As they ran, Mata heard gunfire, and after they were in the car, he saw a man running down the street shooting. (*Id.*)

Mares, Herrera, Pinedo, as well as two more people with Mata on the night of the shooting (Sandy Diz and Nicole Bell), testified on Mata's behalf at trial. (*Id.* at 7.) Each stated they left the party together shortly after 2:00 a.m. (*Id.*) Herrera and Mares stated that, after the shooting started, they saw an unknown man running in the street firing a gun. (*Id.*) Both acknowledged on cross-examination, however, that neither of them mentioned the other gunman to officers after the incident. (*Id.* at 8.) Mares additionally identified a photograph of himself taken on March 18, 2002 and acknowledged that the picture showed no visible injuries to his face. (*Id.*)

The jury was instructed on first-degree murder as well as second-degree murder based on an unreasonable belief that deadly force was necessary to protect another. (Dkt. No. 20-1 at 14–15.) The jury convicted Mata of two counts of first-degree murder for Mosqueada's and Padilla's deaths and of aggravated battery with a firearm for the shots fired at Delgado. (Dkt. No. 20-2, at

7.) Mata was sentenced to two terms of life imprisonment for the murders and a ten-year consecutive sentence for the aggravated battery. *Id.*

### B.    Direct Appeal

Mata appealed his trial convictions, arguing that his trial attorney was ineffective for failing to impeach Delgado's testimony about his whereabouts before the shooting, who instigated the events just before the shooting, how many shots were fired, and the significance of Mares's Astros cap. (*Id.* at 9.) Mata also argued on appeal that the imposition of two life sentences and a consecutive ten-year sentence was in error. (*Id.* at 15.) The state appellate court rejected the ineffective assistance of counsel claims, agreed with Mata's sentencing argument, and corrected his mittimus so that his sentences all ran concurrently. (*Id.* at 15–16.) Mata did not file a petition for leave to appeal ("PLA") with the Illinois Supreme Court.

### C.    Mata's Post-Conviction Petition

Mata filed a post-conviction petition, in which he argued that his trial attorney was ineffective for failing to follow through with a motion to suppress the videotaped statement and for failing to call William Rivera to testify at trial, and that his counsel on direct appeal was ineffective for failing to argue these grounds for finding ineffective assistance of trial counsel.[3] (Dkt. No. 20-3 at 5–6.) The state trial court summarily dismissed the petition at the first stage of post-conviction review as frivolous or patently without merit. (*Id.* at 6.)

---

[3] Neither Mata's first state post-conviction petition nor the state trial court's dismissal of it is in the record before this Court. The above description of claims is thus taken from *People v. Mata*, 2011 WL 9684766, at *3 (Ill. App. Ct. June 17, 2011), and *People v. Mata*, 2016 IL App (1st) 122408-U, ¶ 11. Both decisions discuss the first post-conviction petition's claims, but neither decision lists all the claims. The Court has, as best as possible, pieced together the claims from these decisions and from a letter from Mata's state appellate defender in his first post-conviction case. (Dkt. No. 1-2 at 2.) Although the Rules Governing § 2254 Cases direct respondents to supply relevant transcripts and appellate briefs with their answers, *see* Rule 5(b)–(d), the Rules do not require that post-conviction petitions and trial court rulings regarding those petitions be included. Nonetheless, when a respondent argues procedural default, as is the case here, including the post-conviction petition and the trial court's ruling would assist the Court.

Mata appealed the decision and was appointed counsel for the appeal. The appointed appellate attorney argued only the claim for ineffective assistance of trial counsel based on the abandoned motion to suppress. (Dkt. No. 20-2 at 18–56.) The state appellate court first determined that the claim had been waived under state law because it could have been raised on direct appeal. (Dkt. No. 20-3 at 6–7.) The court then addressed the claim's merits when addressing Mata's claim that his attorney on direct appeal was ineffective for failing to raise the claim, which the court acknowledged was not argued in the post-conviction appellate brief. (*Id.* at 7 ("although postconviction appellate counsel has failed to argue ineffective assistance of direct appeal counsel, based on defendant's [post-conviction] petition, we proceed in our review.").)

With respect to the merits, the state appellate court determined that the voluntariness of Mata's videotaped statement was evident not only from the trial testimony of two police detectives and an assistant state's attorney—all of whom stated that Mata received and waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966)—but also from the statement itself. (Dkt. No. 20-3 at 7–9.) According to the state appellate court, the video statement showed that Mata received, stated he understood, and waived each *Miranda* right; he said he was giving his statement voluntarily and not because of any threat or promise; and he said officers had treated him well. (*Id.* at 8.) The state appellate court found "there [wa]s no reason to believe [Mata]'s motion to suppress would have been granted," "presume[d] defense counsel intended to abandon the motion as part of sound trial strategy," and concluded that "appellate counsel c[ould not] be faulted for failing to argue on direct appeal that trial counsel was ineffective." (*Id.* at 8–9.)

6

Mata filed a PLA and argued that the appellate court incorrectly applied the state law standard when affirming the trial court's first-stage dismissal of his post-conviction petition. (Dkt. No. 20-3 at 10–23.) The Illinois Supreme Court denied the PLA. (*Id.* at 25.)

### D. Mata's Successive Post-Conviction Petition

Mata then filed a successive state post-conviction petition arguing: (1) his trial counsel was ineffective for failing to call as a trial witness Rivera, who allegedly saw Mares being beaten; (2) his appellate counsel was ineffective for not arguing the ineffective assistance of trial counsel claim based on the failure to call Rivera; (3) his trial counsel failed to request a jury instruction on second-degree murder under 720 ILCS 5/9-2(a)(1)'s sudden passion element; and (4) evidence existed establishing that Mata was guilty of only second-degree murder under this element, which the State failed to disprove. (Dkt. No. 20-3 at 27–93.) The state trial court denied the petition upon determining that Mata had not met procedural requirements and that his claims were without merit. (*Id.* at 94–102.)

Mata appealed, asserting the ineffective assistance claims about Rivera not being called to testify. (Dkt. No. 42-1.) The state appellate court affirmed the trial court's procedural dismissal of these claims. *People v. Mata*, 2016 IL App (1st) 122408-U. And the Illinois Supreme Court denied Mata's PLA. *People v. Mata*, 60 N.E.3d 879 (Ill. 2016). Mata then filed an amended petition under 28 U.S.C. § 2254 in this Court.

### II. MATA'S AMENDED § 2254 PETITION

Mata's amended § 2254 petition lists only two grounds for relief; but each ground asserts multiple claims, which the Court numbers below. Ground One focuses on the voluntariness of Mata's videotaped statement and argues:

(1)   his videotaped statement was involuntary (Dkt. No. 41 at 8–15) (Claim One);

(2)    his arrest was made without probable cause and his video statement given 26-27 hours later was fruit of the illegal arrest (*id.* at 15–21) (Claim Two);

(3)    trial counsel was ineffective for not following through with the motion to suppress the statement (*id.* at 7, 13–15) (Claim Three); and

(4)    counsel on direct appeal was ineffective for not arguing trial counsel's ineffectiveness for abandoning the motion to suppress, and the state appellate court on post-conviction review considered only some factors when determining the statement's voluntariness, contrary to Illinois' standard of review for a trial court's summary dismissal of a post-conviction petition (*id.* at 7–14) (Claim Four).

Ground Two concerns whether trial counsel was ineffective for not calling Rivera to testify at trial and whether Mata should have been found guilty of only second-degree murder, and argues:

(5)    trial counsel was ineffective for not calling Rivera as a trial witness, and appellate counsel was ineffective for failing to assert trial counsel's ineffectiveness on appeal (*id.* at 22–28) (Claim Five); and

(6)    trial evidence—Mata's testimony, his girlfriend's testimony, Rivera's purported testimony, and Dr. Denton's testimony about some victims being shot from the front—supported a defense of sudden passion, and an instruction on this element of second-degree murder should have been given (*id.* at 28–30) (Claim Six).

For the reasons stated below, Claims One, Two, Three, Five, and Six (all but Claim Four) are procedurally defaulted. Claim Four lacks merit under § 2254(d)'s deferential standard of review that this Court must afford the state appellate court's resolution of the claim.

## A.    Procedural Default

A § 2254 claim may be procedurally defaulted in two ways. The first occurs when a prisoner fails to exhaust fully state court remedies for his federal claim and no longer has the ability to do so under the state's procedural laws. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). Under 28 U.S.C. § 2254(b)(1)(A), state prisoners must "exhaust[] the remedies available in the courts of the State." A prisoner must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the

8

federal courts," which is accomplished "by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). State courts, like federal courts, must apply constitutional law, and thus "[c]omity . . . dictates that when a prisoner alleges that his . . . state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.* at 844.

The second type of procedural default "comes from the independent and adequate state ground doctrine." *Thomas*, 822 F.3d at 384 (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)). Federal habeas review is precluded "where the state courts declined to address a petitioner's federal claims because the petitioner did not meet state procedural requirements." *Id.* at 384. "'A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case.'" *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (quoted case omitted). "'A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied.'" *Id.* Again, "principles of comity and federalism dictate" that federal claims denied by state courts because they were not presented pursuant to state laws be considered procedurally defaulted. *Thomas*, 822 F.3d at 384.

### 1.     Failure to Exhaust Claims One, Two, and Six

With respect to the voluntariness of the video statement (Claim One), Mata presented the issue only as part of his claims that trial counsel abandoned the motion to suppress and that appellate counsel failed to argue trial counsel's ineffectiveness. (Dkt. No. 20-3 at 5–6; Dkt. No. 20-2 at 17–56; Dkt. No. 20-3 at 10–24.) Neither on direct appeal nor in his post-conviction appeals did Mata argue the involuntariness of his video statement as its own claim independent

of his ineffective assistance of counsel claims. "[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004); *see also McGhee v. Watson*, 900 F.3d 849, 853 (7th Cir. 2018); *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (a constitutional claim presented to the state courts only as part of an ineffective assistance of counsel claim does not satisfy § 2254(b)'s exhaustion requirement for the underlying constitutional claim). This Court, like the state appellate court on post-conviction review, may address the voluntariness of the video statement when addressing Mata's ineffective assistance claim (Claim Four). But as its own claim, Mata's contention that his statement was involuntary was not fairly presented to the state courts and is unexhausted.

Claim Two, in which Mata contends that his arrest was illegal and affected the voluntariness of his statement, was not presented in any of his state court appeals—either on direct or post-conviction review. (Dkt. No. 20-1 at 1–43; Dkt. No. 20-2 at 17–56; Dkt. No. 20-3 at 10–24; Dkt. No. 42-1.) This claim is thus unexhausted as well.

Claim Six—that Mata's jury should have received a jury instruction on Illinois's second-degree murder, sudden-passion element and that the State failed to prove the absence of such a defense—was argued in his successive post-conviction petition, but not in his successive post-conviction appeals. (*See* Dkt. No. 42-1.) The claim was not presented at every level of state court review and is also unexhausted.

Bringing these claims now in another successive post-conviction petition to exhaust state remedies, like the successive petition already attempted, would result in the claims' dismissal on procedural grounds. Claims One, Two, and Six are thus unexhausted and procedurally defaulted.

## 2.    Independent and Adequate State Law Ground for Claim Three

Claim Three, which asserts that Mata's trial counsel was ineffective for abandoning the motion to suppress as its own claim separate from the claim that appellate counsel was ineffective for failing to assert it, is also procedurally defaulted for a different reason.

The state appellate court in Mata's first post-conviction appeal determined that the claim was procedurally barred because "[t]he motion to suppress and defendant's videotaped confession . . . were matters in the trial record, such that [Mata] could have raised the [ineffective assistance of trial counsel] claim on direct appeal." (Dkt. No. 20-3 at 7.) "Failure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding." *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) (quoting *People v. Erickson*, 641 N.E.2d 455, 458 (Ill. 1994)). "A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground." *Sturgeon*, 552 F.3d at 611 (citing *Daniels v. Knight*, 476 F.3d 426, 431 (7th Cir.2007); *see also Krol v. Calhoun*, No. 16 CV 11595, 2019 WL 5592757, at *11 (N.D. Ill. Oct. 30, 2019).[4]

Even though the state appellate court went on to consider the merits of the ineffective effective assistance of trial counsel claim in the context of the ineffective assistance of appellate counsel claim (as will this Court), it is clear that the state appellate court relied on Illinois's waiver rule as a ground for denying the claim. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding");

---

[4] This Court notes Mata's contention in his § 2254 petition that several factors relating to the voluntariness of the statement were not in the trial court record, suggesting that he could not have raised his ineffective assistance claim until his post-conviction petition. (Dkt. No. 41 at 12–15.) But the state courts determined that this claim could have been raised on direct appeal and was thus waived under state law. (Dkt. No. 20-3 at 6–7.) "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

*Bivens v. Rednour*, 428 Fed. Appx. 638, 642 (7th Cir. 2011) (where state courts dismiss a federal claim on procedural grounds and then addresses the merits in the alternative, "we still honor the adequate and independent determination"). Claim Three is thus procedurally defaulted.

### 3.    Independent and Adequate State Law Ground for Claim Five

Claim Five—regarding trial counsel not calling Rivera to testify and appellate counsel not arguing trial counsel's ineffectiveness—according to the state appellate court in Mata's successive post-conviction appeal, was not presented in accordance with Illinois's procedural rules. Although Mata argued this claim in his first post-conviction petition, he did not raise the claim in his post-conviction appeal. And his successive post-conviction petition, according to the state appellate court, asserted no grounds to excuse Illinois's procedural default. *See Mata*, 2016 IL App (1st) 122408-U, ¶¶ 18-21.

The failure to satisfy "[t]he state procedural rule" setting forth the requirements for bringing a successive state post-conviction petition, 725 ILCS 5/122–1(f), "is an adequate and independent state ground precluding federal habeas review of [Mata's] claim raised in his second state petition." *Thomas*, 822 F.3d at 385; *see also Chapman v. Jones*, No. 17 C 9190, 2020 WL 3892986, at *7 (N.D. Ill. July 10, 2020). Claim Five is procedurally defaulted.

### 4.    Presence of Cause and Prejudice or a Fundamental Miscarriage of Justice

For the above-stated reasons, Claims One, Two, Three, Five, and Six are procedurally defaulted. Federal habeas review of those claims "is barred unless [Mata] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of

justice." *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536 (2006). Mata demonstrates neither exception.

Mata contends that the ineffectiveness of his attorneys in his post-conviction proceedings caused the procedural defaults. (Dkt. No. 53 at 4–6.) Ineffective assistance of post-conviction counsel, however, does not satisfy the cause requirement in Illinois. While post-conviction counsel's ineffectiveness can amount to cause to excuse a procedural default in some cases, such occurs only in states that either prevent or discourage ineffective assistance claims on direct appeal. *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018) (addressing the exceptions recognized by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013)). As explained by the Seventh Circuit, "Illinois law gives prisoners a meaningful opportunity to litigate claims of ineffective assistance of trial counsel on direct review." *Crutchfield*, 910 F.3d at 978. Thus, the *Martinez/Trevino* exception allowing for ineffective assistance of post-conviction counsel to serve as cause for a procedurally defaulted ineffective assistance of trial counsel claim does not "extend . . . to Illinois prisoners." *Id.*

Nor has Mata shown that a fundamental miscarriage of justice would occur if his defaulted clams are not reviewed on the merits. This exception is reserved for the "exceptional case" where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "[T]he petitioner [must] make a convincing showing of actual innocence." *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016). He "must have 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial' . . . and must persuade the district court that it is 'more likely than not that no reasonable juror would have convicted him in light of

13

the new evidence.'" *Id.* (quoting *Schlup*, 513 U.S. at 324, 327). Mata points to no new reliable evidence not presented at trial demonstrating that he is actually innocent.

Accordingly, all but one of Mata's claims are procedurally defaulted because the claims either were not presented in one full round of state court review or were dismissed on independent and adequate state law grounds. Mata has not demonstrated cause and prejudice or actual innocence as necessary to excuse the defaults. Claims One, Two, Three, Five, and Six are thus denied.

### B. Merits of Claim Four

Mata's claim that his attorney on direct appeal was ineffective for failing to argue his trial counsel's ineffectiveness for abandoning the motion to suppress the video statement was not dismissed on procedural grounds and was addressed on the merits by the state post-conviction appellate court.[5] (Dkt. No. 20-3 at 7–9.) This claim, however, warrants no § 2254 relief.

Federal habeas relief is available for federal claims addressed on the merits by a state court only if Mata demonstrates that the state court's resolution of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[5] Most of the amended § 2254 petition's discussion of this issue contends that the state appellate court erroneously applied Illinois's review standard for a trial court's dismissal of a post-conviction petition at the first stage. But as previously stated several times in this opinion, this Court reviews only constitutional issues and does not reexamine state courts' application of state law. Though focusing on state law, the amended § 2254 petition seeks federal habeas review of the state appellate court decision wherein the only claim addressed on the merits was the ineffective assistance of appellate counsel claim. (Dkt. No. 20-3 at 7–9.) To the extent the amended petition may be liberally construed as asserting a constitutional claim of ineffective assistance of appellate counsel, which Mata asserted in his original § 2254 petition (Dkt. No. 1 at 5), this Court so construes and addresses this claim.

28 U.S.C. § 2254(d). "A state-court decision is contrary to clearly established federal law 'if it applies a rule that contradicts the governing law set forth' in Supreme Court decisions or 'confronts a set of facts that is materially indistinguishable from' a Supreme Court decision but comes out differently." *Valle v. Butler*, 707 Fed. Appx. 391, 398 (7th Cir. 2017) (quoting *Brown v. Payton*, 544 U.S. 133, 141 (2005)). For a state court's application of federal law to be unreasonable, it must be "more than incorrect; it must have been objectively unreasonable." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (citing *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). "'Unreasonable' in [this] context . . . means something . . . lying well outside the boundaries of permissible differences of opinion." *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015) (quoting *Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015)). As long as this Court is "satisfied that the [state appellate court] took the constitutional standard seriously and produce[d] an answer within the range of defensible positions, we will affirm the district court's decision to deny the writ." *Felton*, 926 F.3d at 464. "The petitioner bears the burden of showing that the state court's decision was unreasonable.'" *Valle*, 707 Fed. Appx. at 398 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

     With respect to Mata's ineffective assistance of appellate counsel claim, the state appellate court cited the familiar two-prong test from *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). The state court stated that Mata had to "show both deficient performance by counsel and resultant prejudice." (Dkt. No. 20-3 at 7.) The state court further noted that "[a]ppellate counsel need not raise every conceivable argument, and counsel's assessment of what to argue will not be questioned unless his judgment was patently erroneous," and that "[u]nless the underlying issues are meritorious, defendant obviously suffered no prejudice due to appellate counsel's failure to raise the arguments on appeal." (*Id.*)

This Court concludes that the state appellate court followed the correct legal standards. "The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). To establish such a claim, a petitioner must show that: (1) his appellate attorney's performance was constitutionally deficient, *i.e.*, "that his counsel was objectively unreasonable," and (2) the deficient performance prejudiced the petitioner's appeal, *i.e.*, a reasonable probability exists "that, but for his counsel's unreasonable failure to [raise a claim], he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (citing *Strickland*, 466 U.S. at 687–91, 694). "Appellate counsel is not required to present every non-frivolous claim on behalf of her client." *Makiel*, 782 F.3d at 897. "[A]ppellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Id.* "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) (citing *Strickland*, 466 U.S. at 687).

Addressing the merits of Mata's ineffective assistance of appellate counsel claim, the state appellate court explained as follows:

> Turning to the underlying merits, in order to sustain a claim of ineffectiveness based on failure to litigate a motion to suppress, a defendant must establish that the motion would have been granted, thereby assuring a different trial result. (citations omitted).

> Defendant contends he has established just that. Defendant contends his motion to suppress correctly states that he was not given *Miranda* warnings and his statement was involuntary based on physical and mental abuse by the police.

> Defendant's contentions, however, are contradicted by the trial record. Detective Bor, Detective Smith, and [Assistant State's Attorney] Mojica all testified that at separate times following defendant's arrest, they advised him of his *Miranda* rights and, in each instance, he stated he understood them. In the videotaped statement played at trial, [Assistant State's Attorney] Mojica again

16

advised defendant of his *Miranda* rights, and he stated he understood each one as she read them. Defendant acknowledged [Assistant State's Attorney] Mojica was not his attorney, but stated that he wished to make the videotaped statement anyway. Defendant further stated that the police detectives and [Assistant State's Attorney] had treated him well, providing him with sustenance, and that he was making the statement freely and voluntarily absent threat or promise in exchange. Defendant, in fact, elected to praise Detective Smith for treating him fairly while in custody. Because the record flatly contradicts defendant's claims of abuse, and defendant has not pointed to any evidence outside the trial record or affidavits in support of his claims, there is no reason to believe defendant's motion to suppress would have been granted.

Given this record, we can also presume defense counsel intended to abandon the motion as part of sound trial strategy. (citations omitted) This is especially true where counsel successfully argued a motion to suppress evidence seized at the time of defendant's arrest and zealously represented defendant at trial by presenting the testimony of a number of witnesses involved in the incident on the evening in question.

Because we may presume trial counsel abandoned the motion as part of sound trial strategy and, most importantly, because defendant's motion had no likelihood of success, appellate counsel cannot be faulted for failing to argue on direct appeal that trial counsel was ineffective for not litigating the motion to suppress. Defendant's *Strickland* claim has no arguable merit, and the circuit court therefore properly dismissed his petition at the first stage of proceedings.

(Dkt. No. 20-3 at 7–9.)

Mata does not contest the state appellate court's description of what he said in the statement. Instead, he contends the state court did not consider all the factors, such as police officers' physical and mental abuse of Mata before his statement. (Dkt. No. 41 at 7–15.) According to Mata, officers threw him against a wall, dragged him down stairs, pushed him, and threatened that his fiancé would be arrested and the Department of Child and Family Services would be contacted to take his daughter if he did not give a statement. (*Id.* at 8–10.) He further states that he was handcuffed to a wall in a small room during much of the time before his video statement, was sleep deprived, and was not read his *Miranda* rights during every interrogation between the time of his arrest and the statement. (*Id.* at 9–11.) He contends that "[g]iven these

facts that transpired prior to and leading up to the making of Mata's oral/video statement, it can be inferred that he was in fact coerced by Chicago detectives." (*Id.* at 11.) According to Mata, the state appellate court did not consider all factors when determining that the motion to suppress the statement was a meritless motion his trial attorney chose not to pursue. (*Id.* at 12–14.)

When determining the voluntariness of a statement, a court must "evaluate the 'totality of the circumstances' surrounding it." *Carter v. Thompson*, 690 F.3d 837, 843 (7th Cir. 2012) (quoting *Schneckloth v Bustamonte*, 412 U.S. 218, 226 (1973) (noting various factors to consider)). Some factors weigh more than others in each case, but ultimately the voluntariness inquiry asks whether the statement is "the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Stewart*, 536 F.3d 714, 723 (7th Cir. 2008) (internal quotes and citations omitted).

Prior to the above-quoted discussion about Mata's videotaped statement, the state appellate court noted factors listed in his motion to suppress: "he stated that he was held by police for two days without *Miranda* warnings; he was 'poked and profaned,' kept in solitary confinement, forced to stand handcuffed to cell walls for hours, and threatened by police officers." (Dkt. No. 20-3 at 2); *see also* (Dkt. No. 20-2 at 39–40). That the state appellate court focused on the video statement itself when ultimately deciding it was voluntary does not mean the court did not consider other factors. Given the evidence in the record—testimony from two police detectives and an Assistant State's Attorney to the effect that Mata understood his *Miranda* rights, waived them, and wanted to make the statement, and the video statement itself, wherein Mata stated he understood and waived each *Miranda* warning and that he was voluntarily giving the statement free of threats and promises—the state appellate court's

18

determination that the motion to suppress was meritless and would not have succeeded was not unreasonable.

Nor was the state appellate court unreasonable when it determined that trial counsel presumably abandoned the motion to suppress as part of sound trial strategy. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). As the state appellate court noted, Mata's trial attorney successfully litigated a motion to suppress evidence from a search conducted at the time of Mata's arrest and "zealously represented [him] at trial by presenting the testimony of a number of witnesses" to the shooting incident. (Dkt. No. 20-3 at 8–9); *see also* (Dkt. 20-2 at 7–8) (on direct appeal, the state appellate court listed five fact witnesses, other than Mata, called to testify on his behalf); *see also Carter v. Duncan*, 819 F.3d 931, 950 (7th Cir. 2016) (Easterbrook, concurring) ("*Strickland* directs a court to examine the totality of counsel's performance, not to concentrate on a supposed error while losing sight of what the lawyer *did* for his client.") (emphasis in original).

Considering the abundance of evidence demonstrating that Mata voluntarily gave his video statement, this Court cannot conclude that the state appellate court's determinations—that a motion to suppress the statement would not have succeeded, that trial counsel presumably abandoned the motion, and that appellate counsel was not ineffective for failing to argue ineffective assistance of trial counsel with respect to the motion—were unreasonable. Mata has not made the requisite showing under § 2254(d) to warrant federal habeas relief for this claim. For this reason, Claim Four is without merit and denied.

### III.    CONCLUSION

For the reasons stated above, none of Mata's claims warrant relief under § 2254 and his petitions for federal habeas corpus relief (Dkt. Nos. 1, 40, 41) are denied. The Court declines to issue a certificate of appealability, as Mata cannot make a substantial showing of the denial of a constitutional right or that reasonable jurists would debate, much less disagree, with this Court's resolution of his claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2)); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Any pending motion is denied as moot. The Clerk is directed enter judgment in favor of the respondent and against Mata.

Mata is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal in this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of judgment, *see* Fed. R. Civ. P. 59(e), and suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). Neither the time to file a Rule 59(e) motion nor the time to file a Rule 60(b) motion can be extended. *See* Fed. R. Civ. P. 6(b)(2).

ENTERED:

_____
Andrea R. Wood
United States District Judge

Date: September 21, 2020